# UNITED STATES DISTRICT COURT
for the
District of Colorado

| | |
|---|---|
| In the Matter of the Search of 6656 Julian Street, Denver, Colorado, 80221, and to include all out-buildings and vehicles located thereon. | ) ) ) ) ) Case No. 20-sw-00622-STV |

## APPLICATION FOR A SEARCH WARRANT

I, **Special Agent Larry Bazin**, a federal law enforcement officer for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*: **SEE "ATTACHMENT A"**, which is attached to and incorporated in this Application and Affidavit

located in the ___State and___ District of ___Colorado___, there is now concealed *(identify the person or describe the property to be seized)*:

**SEE "ATTACHMENT B"**, which is attached to and incorporated in this Application and Affidavit

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☒ evidence of a crime;
☒ contraband, fruits of crime, or other items illegally possessed;
☒ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922(g)(1) | Felon in Possession of a Firearm or Ammunition |
| 18 U.S.C. § 922(j) | Possession of a Stolen Firearm |
| 18 U.S.C. § 924(m) | Theft of a Firearm from a Licensed Dealer |

The application is based on these facts:
**X** Continued on the attached affidavit, which is incorporated by reference.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

/s/ _____
*Applicant's signature*

Larry Bazin, Special Agent
*Printed name and title*

Sworn to before me and: ☐ signed in my presence.
☒ submitted, attested to, and acknowledged by reliable electronic means.

Date: 5/19/2020

_____
*Judge's signature*

City and state: Denver, CO

Scott T. Varholak, U.S. Magistrate Judge
*Printed name and title*

**ATTACHMENT A**
**DESCRIPTION OF ITEM TO BE SEARCHED**
Residence located at 6656 Julian Street, Denver, Colorado, 80221

The residence, all electronic devices located inside the residence and/or curtilage, all vehicles in or on the curtilage of 6656 Julian Street can further be described as being the sixth structure located on the east side of Julian Street, South of the intersection of W. 66th Ave and Julian Street. The residence is a single story home, with what appears to be white siding. The roof appears to have grey or light colored shingles. The residence also has two medium size windows to the right of the front door.

*See attached photograph.*



# ATTACHMENT B
## DESCRIPTION OF ITEM TO BE SEIZED AND SEARCHED
ITEMS TO BE SEIZED

Any and all evidence, fruits, and instrumentalities of the following offenses: Felon in Possession of a Firearm in violation of 18 U.S.C. § 922(g)(1), Possession of a Stolen Firearm in violation of 18 U.S.C. § 922(j), and Theft of a Firearm from a Licensed Dealer in violation of 18 U.S.C. § 924(m), and attempts and/or conspiracy to commit those offenses, including;

1. Firearms, firearm parts, and ammunition.

2. Evidence of firearm or ammunition possession, including holsters, gun safes, carrying cases, receipts from shooting ranges, cleaning kits, and receipts, documents, or records related to the sale or purchase of any firearms or ammunitions.

3. Any U.S. currency and financial proceeds from dealing in illegal firearms.

4. Records that establish the person who has control possession, custody or dominion over the property, to include mail, bills, keys, rent receipts, leases, mortgage documents, and correspondence with or documents issued by government agencies.

5. Evidence or indicia of ownership or control over any items seized pursuant to this warrant, to include identification documents or personal items in close proximity to firearms, ammunition, and cellular phones.

6. Financial and bank records, money orders and cashier's checks, safe deposit box keys, safes, computer systems and information contained on computer disks and other items evidencing the possession, transfer, and/or concealment of assets or expenditures of money.

7. Communications in any format, written or electronic, about obtaining, stealing, possessing, transporting, selling and/or distributing firearms.

8. Photographs, in any format, printed or electronic, and videos showing firearms or ammunition or people in possession of firearms or ammunition.

9. Contact information, ledgers, notes in any format, electronic or written, related to the source of firearms or theft of firearms or tending to establish the possession of firearms or transfer of firearms or affiliation with other co-conspirators.

10. Cellular phones or other digital devices capable of messaging or accessing social media. Should such evidence be seized, it will not be searched. Supplemental search warrants will be requested prior to searching the content of such items; and,

11. Articles of clothing consistent with those being worn by the suspects in the April 28, 2020 burglary of Eagles Nest Armory.

**AFFIDAVIT IN SUPPORT OF SEARCH WARRANT**

I, Larry A. Bazin, being first duly sworn, hereby depose and state as follows:

1. This affidavit is submitted in support of an Application for a Federal Search Warrant to search the following locations:

    **TARGET LOCATION**: Residence located at 6656 Julian Street, Denver, Colorado, 80221;

    **TARGET VEHICLE**: A white Chevy box truck bearing Colorado license plate BNV333.

2. Your Affiant, Larry A. Bazin, is a Special Agent (SA) with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), United States Department of Justice, Denver, Colorado. Your Affiant is an investigator or law enforcement officer of the United States, within the meaning of Title 18, United States Code, Section 2510(7) that is an officer of the United States empowered by law to conduct investigations of, and to make arrests for, offenses enumerated by statute in the United States Code, and the Colorado Statutory Code. Your Affiant is authorized under the Federal Rules of Criminal Procedure, Rule 41(a)(1)(C) as a Federal law enforcement officer who is engaged in enforcing the criminal laws, and is within any category of officers authorized by the Attorney General to request a search warrant.

3. Your Affiant has been employed as a Special Agent with ATF since March 2016. Your Affiant's primary duties consist of the enforcement of federal firearms laws, armed narcotics trafficking, and conspiracy laws. Prior to becoming an ATF SA, your Affiant was employed with the Georgia Bureau of Investigation (GBI) as a Special Agent (SA) for approximately four and a half years. During your Affiant's employment with the GBI, your Affiant was charged with the duty of enforcing the criminal laws of the state of Georgia. Your Affiant was case agent and participated in criminal investigations involving serious violent crimes including Homicide, Rape, Aggravated Assault, Narcotics Trafficking, Firearm Violations and Prohibited Persons in Possession of Firearms. While employed as a GBI SA, your Affiant conducted numerous investigations that have led to the seizure of evidence through the utilization of court sanctioned searches.

4. The statements set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from other experienced federal agents and local law enforcement. Since this affidavit is being submitted for the limited purpose of securing a search warrant, your Affiant has not included all of the facts known concerning this investigation.

5. Your Affiant has set forth only the facts necessary to establish probable cause to believe evidence of Felon in Possession of a Firearm in violation of 18 U.S.C. § 922(g)(1),

Possession of a Stolen Firearm in violation of 18 U.S.C. § 922(j), and Theft of a Firearm from a Licensed Dealer in violation of 18 U.S. C. § 924(m), and attempts and/or conspiracy to commit those offenses), are located at 6656 Julian Street, Denver, Colorado, 80221, hereinafter referred to as the **TARGET LOCATION** and further described in **Attachment A**.

<h2 style="text-align:center"><u>INVESTIGATION</u></h2>

### Burglary of Eagles Nest Armory

6. Eagles Nest Armory is located at 12371 W. 64th Ave., Arvada, Colorado, and is a licensed firearms dealer.

7. On Tuesday April 28, 2020, Arvada Police Officers were dispatched to Eagles Nest Armory, after the report of a burglary in progress. The caller advised the Arvada Police Department (APD) that the gun store located in the strip mall behind his residence was being broken into. APD was also advised that the suspects were operating a Sports Utility Vehicle (SUV). While APD Officers were in route to the gun store, APD dispatch advised the Officers that a verified alarm had been received from the Eagles Nest Armory.

7. After APD arrived on the scene, Officers learned that unlawful entry had been made to the business and the suspects were gone. Thereafter, Eagles Nest Armory owner Mark Eagleton arrived on scene and confirmed his store had been broken into. Based upon a review of the store records, it was established twenty-one firearms had been stolen, including;

    - a Colt, Model SP1, .223 Caliber Rifle with serial number: CMH038055;
    - a Taurus, Model M82, .38 Caliber Revolver, with serial number: KR234507;
    - a Diamond Back, Model DB15, .300 Caliber Rifle, with serial number: DB2419687.

8. Eagleton allowed APD Officers to have access to the store surveillance system, and Officers were able to observe video recordings of the burglary. Specifically, on the recording, APD Officers were able to see a black Mitsubishi Endeavor SUV, arrive at the Eagles Nest Armory at approximately 3:45 a.m.

9. Four unknown individuals exited the SUV and attempted to access the business through front door. After failing to access through front door, the suspects drove the SUV to the rear of the business where they were able to force open a door. After gaining entry and stealing firearms from inside, the suspects re-entered the SUV left the area at approximately 3:49 a.m.

10. From the surveillance video, Officers were able to observe four suspects. Suspect 1 appeared to be a white male, wearing a black balaclava, gray hoodie, gray sweat pants and white shoes. Suspect 2 appeared to be a black male, wearing a gray hoodie, and black and white shoes. Suspect 3 appeared to be a white or Hispanic male, with a black hoodie, blue and gray jeans, and brown boats. Suspect 4 appeared to be a white or Hispanic male wearing a green hoodie, black hat, black pants and white shoes.

### Information Received From Confidential Source

11. On May 5, 2020, Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) Special Agent (SA) Larry Mims received information from an ATF Confidential Source (CS). The CS was providing law enforcement with information for in return for monetary considerations, and had previously worked with law enforcement in return for consideration in regards to potential weapons charges he/she was facing. The CS has no felony convictions, nor any misdemeanor convictions pertaining to his/her truthfulness. The CS had provided law enforcement with information relating to criminal investigations previously, and Agents found him/her to be a reliable source. Much of the information provided by the CS has been corroborated by other evidence, and none has proven false.

12. Specifically, the CS informed SA Mims that an individual by the name of NORBERTO VALDEZ-ESQUIVEL contacted him/her and stated that he was trying to sell two stolen firearms for an associate. NORBERTO informed CS that he did not steal the firearms but he knew the individual who did, and that he would hold the firearms for CS to purchase. NORBERTO sent the CS photographs of two of the weapons that appeared to be revolvers in a text message that CS showed SA Mims. After reviewing the photos, SA Mims was able to determine that the guns fit the description of firearms stolen from Eagles Nest Armory on April 28, 2020.

13. On May 6, 2020, ATF Task Force Officer (TFO) Dustin Smith and ATF SA Larry Mims met with CS, and confirmed that he/she could possibly purchase multiple firearms from NORBERTO. CS identified the **TARGET LOCATION** as NORBERTO's residence, and informed law enforcement that one of the firearms that he could purchase from NORBERTO was a "Taurus" brand revolver. The CS was also able to learn NORBERTO stored the stolen firearms in the air filter compartment under the hood of a green Jeep located at the **TARGET LOCATION**. To confirm the CS's statement, TFO Smith drove past the **TARGET LOCATION** and observed a green Jeep in the driveway.

14. Additionally on May 6, 2020, the CS also informed TFO Smith and SA Mims that NORBERTO had a nephew named DANIEL ESQUIVEL. The CS described DANIEL as a Hispanic male who always carried a loaded firearm. In fact, the CS told law enforcement he had personally observed DANIEL in possession of two firearms a few weeks prior and a few days prior, he/she had seen DANIEL driving a black Mitsubishi SUV.

15. On Friday, May 15, 2020, CS contacted SA Mims and informed SA Mims that NORBERTO contacted him/her, stating he had two AR-15 type rifles. NORBERTO told CS he would hold the AR-15 rifles for the CS to purchase.

### ATF Undercover Purchase of Stolen Firearms

16. On May 16, 2020, CS made contact with NORBERTO via cellular phone. NORBERTO agreed to meet CS at the **TARGET LOCATION** in order to sell CS firearms. CS informed NORBERTO that he/she would be bringing an associate of his/hers. CS  informed

NORBERTO that the associate would be the one purchasing the firearms. However, the associate CS was referring to was an undercover ATF Agent (UC).

17. At approximately 3:14 p.m. on May 16, 2020, UC and CS arrived at the **TARGET LOCATION** in an undercover vehicle. The UC and CS walked to the front of the **TARGET LOCATION** where they made contact with NORBERTO, DANIEL and individual later identified as NORBERTO's brother, VICTOR VALDEZ-ESQUIVEL. The UC recognized NORBERTO and DANIEL from photographs he had previously obtained from a Law Enforcement Database.

18. After introductions were made, NORBERTO retrieved a set of keys from inside the **TARGET LOCATION** and led UC and CS to a white Chevrolet box Truck bearing license plate number BNV333, herein referred to as **TARGET VEHICLE**. The **TARGET VEHICLE** was parked on the street in front of the **TARGET LOCATION**. NORBERTO proceeded to unlock the pull-up door of the **TARGET VEHICLE** and retrieved a black bag. NORBERTO, UC, and CS, then went over to the trunk of the undercover vehicle, at which time NORBERTO removed two rifles from the black bag, a Colt, Model SP1, .223 Caliber Rifle, with serial number: CMH038055 and a Diamond Back, Model DB15, .300 Caliber Rifle, with serial number: DB2419687, along with two ammunition magazines.

19. NORBERTO told the UC that while the Colt, Model SP1, .223 Caliber Rifle, with serial number CMH038055 and the Diamond Back, Model DB15, .300 Caliber Rifle, with serial number DB2419687, did not have any "heads" on them, the firearms were "hot." In street terminology, this meant that although the firearms were stolen ("hot"), they had not been used to kill anyone ("heads").

20. VICTOR and DANIEL then joined UC, CS, and NORBERTO. The parties began to discuss the firearms, and VICTOR informed UC that one of the rifles used to be his. When the UC told VICTOR he would also purchase any other firearms he had, VICTOR let UC know that he could obtain a shotgun, and also showed UC a small Ruger pistol that he had in his waistband. UC attempted to purchase the pistol from VICTOR, however he refused to sell it, stating it was his personal gun. UC then agreed to pay NORBERTO $3000 for the two rifles, so long as NORBERTO, DANIEL AND VICTOR, could acquire more firearms for UC to purchase.

21. NORBERTO stated that he could "get them all day" and DANIEL stated "[Y]eah for sure. That's a sure thing." The Colt, Model SP1, .223 Caliber Rifle, with serial number CMH038055; Diamond Back, Model DB15, .300 Caliber Rifle, with serial number DB2419687, along with two ammunition magazines, were then placed into the trunk of the undercover vehicle and the parties went inside the **TARGET LOCATION**.

22. Once inside, VICTOR showed the UC three other pistols that the UC attempted to purchase. However, while VICTOR would not sell any of the firearms, he told the UC he could acquire more to sell. UC, CS and NORBERTO then stepped outside the **TARGET LOCATION**, where UC paid NORBERTO with $3000 cash, in bills ATF Agents had recorded for identification purposes prior to the transaction.

4

23. UC, CS and NORBERTO then went back inside the **TARGET LOCATION** and NORBERTO retrieved a Smith & Wesson 9mm pistol. NORBERTO handed it to UC, and the UC offered to buy the firearm. NORBERTO stated that the price of the 9mm pistol was $700, however he did not want to sell it at this time because it was his personal gun. During that time, VICTOR also approached UC and handed him a revolver. When the UC asked VICTOR about the price of the revolver, VICTOR stated that the revolver belonged to DANIEL. UC asked DANIEL about the price of the revolver, however, DANIEL refused to sell the firearm telling the UC "that's my bitch."

24. Ultimately, NORBERTO offered to sell UC the Smith & Wesson 9mm pistol and another revolver for $1200. In doing so, NORBERTO asked UC and CS to come back outside to the **TARGET VEHICLE** with him. Upon arrival, NORBERTO again opened the back of the **TARGET VEHICLE** and retrieved a cardboard box. NORBERTO removed two revolvers from the box, one of which was a Taurus, Model M82, .38 Caliber Revolver, with serial number: KR234507. Although UC attempted to purchase both revolvers, NORBERTO would only sell the Taurus, Model M82, .38 Caliber, Revolver, with serial number: KR234507.

25. The UC agreed to buy the Taurus, Model M82, .38 Caliber Revolver, with serial number: KR234507 and the Smith & Wesson 9mm pistol for $1200. The parties then went back inside the **TARGET LOCATION**, where NORBERTO turned over the Taurus and the Smith & Wesson, along with two magazines and a magazine holster to the UC. Using the same street slang used in their discussion earlier, NORBERTO again indicated to the UC that the Taurus, Model M82, .38 Caliber Revolver, with serial number: KR234507 was stolen, but otherwise not involved in any killings. Additionally, DANIEL told the UC that the Smith & Wesson 9mm was not stolen, specifically telling the UC the gun was "clean" and that he had purchased the pistol from his "homie."

26. UC, CS and NORBERTO then returned outside where UC paid NORBERTO with $1200 cash, in bills ATF Agents had recorded for identification purposes prior to the transaction. UC informed NORBERTO that he would be in contact with him to purchase more firearms, before returning to the undercover vehicle with the CS and departing **TARGET LOCATION**.

27. Upon further investigation, it was confirmed three of the four firearms purchased from NORBERTO, being, the Colt, Model SP1, .223 Caliber Rifle with serial number: CMH038055, the Taurus, Model M82, .38 Caliber Revolver, with serial number: KR234507, and the Diamond Back, Model DB15, .300 Caliber Rifle, with serial number: DB2419687, were stolen from Eagles Nest Armory on April 28, 2020.

28. In addition, law enforcement was able to confirm that NORBERTO is a convicted felon, having been convicted of the Class 4 felony of Assault in Denver County case 2003CR2976.

29. Your Affiant consulted with ATF Special Agent Shane Abraham, who is trained and has experience in making interstate nexus determinations pertaining to firearms. Special Agent

Abraham advised that the Colt, Model SP1, .223 Caliber Rifle with serial number: CMH038055, the Taurus, Model M82, .38 Caliber Revolver, with serial number: KR234507, and the Diamond Back, Model DB15, .300 Caliber Rifle, with serial number: DB2419687, were not manufactured in Colorado, and therefore traveled in, or affected interstate, or foreign commerce, prior to being recovered in this investigation.

## CONCLUSION

30. Based upon the above information, your Affiant believes probable cause has been established showing the items described in **Attachment B**, *i.e.*, evidence, fruits, and instrumentalities of the offenses of Felon in Possession of a Firearm in violation of 18 U.S.C. § 922(g)(1), Possession of a Stolen Firearm in violation of 18 U.S.C. § 922(j), Theft of a Firearm from a Licensed Dealer in violation of 18 U.S. C. § 924(m), and attempt and/or conspiracy to commit those offenses, are located at 6656 Julian Street, Denver, Colorado, 80221, the **TARGET LOCATION,** and further described in **Attachment A**.

31. Therefore, your Affiant respectfully requests the Court issue a premises search warrant to search the residence located at 6656 Julian Street, Denver, Colorado, 80221, more fully described in **Attachment A**, to seize the item described in **Attachment B**.

s/ _____
Larry A. Bazin

Special Agent, ATF

Sworn to and subscribed by reliable electronic means this 19th day of May, 2020.

_____
UNITED STATES MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO

**This affidavit was reviewed and submitted by Thomas Minser, Assistant United States Attorney.**